**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 02 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GREER COALITION, INC.; THE CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs - Appellants, <br> v. <br><br> U.S. FOREST SERVICE; TOM TIDWELL, in his official capacity as Chief of the U.S. Forest Service; FAYE KRUEGER, in her official capacity as Appeal Deciding Officer; and CHRIS KNOPP, in his official capacity as Forest Supervisor, Apache-Sitgreaves National Forest, Southwestern Region of the United States Forest Service, <br><br> Defendants - Appellees. | No. 11-15531 <br><br> D.C. No. 3:09-cv-09-08239-DGC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted February 13, 2012
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before:     TASHIMA and GRABER, Circuit Judges, and GARBIS,[**] Senior
            District Judge.

The Forest Service's proposed Black River Land Exchange would exchange two parcels of federal land ("Greer Parcels") for three parcels of non-federal land currently owned by Herbert Owens ("Owens Parcels"). Plaintiff Greer Coalition is an organization of citizens who live in or own property in Greer, Arizona. Plaintiff Center for Biological Diversity is a non-profit conservation organization. In this latest round of litigation, Plaintiffs appeal the district court's grant of summary judgment to the Forest Service. Plaintiffs argue that the Forest Service violated the National Environmental Policy Act 0f 1969 ("NEPA") and the Federal Land Policy and Management Act of 1976 ("FLPMA").

## I.

This court reviews the district court's grant of summary judgment *de novo*. *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006). "Agency decisions that allegedly violate NEPA and FLPMA . . . may be set aside if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). An agency decision is arbitrary and capricious if it "relied on factors Congress did not intend it to

---

[**]     The Honorable Marvin J. Garbis, Senior United States District Judge for the District of Maryland, sitting by designation.

consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc), *overruled on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (internal quotation marks omitted).

## II.

Plaintiffs bring two types of challenges under NEPA. "NEPA does not require us to decide whether an EIS is based on the best scientific methodology available." *Id.* at 1003 (internal quotation marks and brackets omitted). "[N]or does NEPA require us to resolve disagreements among various scientists as to methodology." *Friends of Endangered Species, Inc., v. Jantzen*, 760 F.2d 976, 986 (9th Cir. 1985); *see also Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Instead, "[o]ur task is simply to ensure that the procedure followed by the Service resulted in a reasoned analysis of the evidence before it." *Friends of Endangered Species*, 760 F.2d at 986.

## A.

The Forest Service circulated a draft Environmental Impact Statement ("EIS") for comment. Commenters criticized the Geologic Resources Report for

3

lacking data. In response, the Forest Service prepared an Amendment to the Geologic Resources Report ("Amendment"), which develops a model for the impact of "wildcat development" based on two slug tests performed on site. Plaintiffs argue that the Forest Service should have released the Amendment for public comment.

An agency may "[s]upplement, improve, or modify its analyses" in response to comments, 40 C.F.R. § 1503.4(a)(3), and "[i]f a draft statement is so inadequate as to preclude meaningful analysis, the agency shall prepare and circulate a revised draft of the appropriate portion," *id.* § 1502.9(a). Plaintiffs do not make any showing that the draft EIS was so inadequate as to preclude meaningful analysis. Therefore, the Forest Service was not required to circulate a revised draft for comments.

Instead, Plaintiffs argue that the Forest Service should have prepared a supplement. "Courts must uphold an agency determination that a supplemental EIS is not required if that determination is not arbitrary and capricious." *Or. Natural Res. Council v. Lyng*, 882 F.2d 1417, 1422 (9th Cir. 1989). Agencies must "prepare supplements to either draft or final environmental impact statements if . . . [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. §

4

1502.9(c)(1). If the agency prepares a supplement, it must seek comments. *Id.* § 1502.9(c)(4).

The Forest Service's decision not to formally supplement its EIS was not arbitrary and capricious because the Amendment is neither a significant new circumstance nor does it provide significant new information. The supplement requirement is triggered by "new circumstances" when the underlying *project* significantly changes. *See, e.g.*, *Klamath Siskiyou Wildlands Ctr.*, 468 F.3d at 561 (decision that substantially changed resource management plan requires supplemental EIS); *N. Idaho Cmty. Action Network v. U.S. Dep't of Trasnsp.*, 545 F.3d 1147, 1152, 1157 (9th Cir. 2008) (per curiam) (changes to highway proposal in response to comments too minor to require supplement). The Amendment did not relate to a change in the proposed exchange.

Significant "new information" typically involves intervening information. *See, e.g.*, *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 935, 937-38 (9th Cir. 2010) (revelation of 1900 acres of nesting habitat in project area, discovered after Forest Service's Environmental Assessment stated that there were no known nesting grounds in area, triggered supplemental environmental assessment); *Ober v. EPA*, 84 F.3d 304, 314 (9th Cir. 1996) (documents sent by state agency after close of comment period were new information because they "did not merely

expand on prior information and address alleged deficiencies," were "relied on and were critical to the EPA's approval" and were of questionable accuracy). The Amendment provides analysis conducted pursuant to comments on a draft EIS and confirms information already in the record. It does not provide new information under this standard.

**B.**

Plaintiffs take issue with the Forest Service's procedure for testing hydraulic conductivity. First, Plaintiffs argue that the Forest Service should have used a different type of test that would, they argue, provide more accurate information. Second, Plaintiffs object to the testing sites that the Forest Service chose because, they argue, the tested locations are unrepresentative. Third, Plaintiffs object to the Forest Service's decision to average the two disparate measures of hydraulic conductivity produced by their tests. Plaintiffs fail to show that any of these choices was unreasonable. This court must decline Plaintiffs' invitation to "resolve disagreements among various scientists as to methodology." *Friends of Endangered Species,* 760 F.2d at 986.

Plaintiffs also argue that the Amendment fails to consider the cumulative impact of reasonably foreseeable development. An EIS must analyze "the impact on the environment which results from the incremental impact of the action when

6

added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7. The Amendment does not consider current conditions, but the final EIS considers the Amendment along with a different study that evaluates the present state of local groundwater. Therefore, the Forest Service did consider cumulative effects.

In its Amendment, the Forest Service analyzes the effect of a hypothetical "wildcat development" on surface water flow. This analysis assumes that fifty percent of the amount of the water pumped from wells in the hypothetical development would be recharged to the water table through septic tank effluent. Plaintiffs argue that residents in this development would be required to connect to a sanitation district and therefore septic recharge would not occur.

The harmless error doctrine applies "when a mistake of the administrative body is one that *clearly* had *no bearing* on the procedure used or the substance of [the] decision reached." *Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 807 (9th Cir. 2005) (internal quotation marks omitted). Even if the Forest Service's septic recharge assumption was erroneous, the error was harmless because the Forest Service's other estimates were conservative by more than a factor of two. For example, the Forest Service's hypothetical development assumed immediate installation of 258 wells, even though the Forest Service

estimates that no more than 35 wells would be installed over the next 15 years. This estimate, conservative by a factor of over seven, renders the Forest Service's alleged factor-of-two error harmless. If the Forest Service had not assumed septic recharge, but had assumed a less conservative but still reasonable number of wells in its model, it would have reached the same conclusion.

## III.

Plaintiffs bring two types of challenges under FLPMA. Plaintiffs fail to show that any of the challenged choices were a "clear error of judgment," *Mt. St. Helens Mining & Recovery Ltd. P'ship v. United States*, 384 F.3d 721, 728 (9th Cir. 2004), or that the Forest Service "entirely failed to consider an important aspect of the problem," *Lands Council*, 537 F.3d at 987. Accordingly, both challenges fail.

## A.

FLPMA authorizes a land exchange if the agency determines that the "public interest will be well served by making that exchange." 43 U.S.C. § 1716(a). The Forest Supervisor determined that the proposed exchange is in the public interest. Plaintiffs challenge two aspects of this determination, each of which fails. Plaintiffs argue that the Forest Service ignored the benefits of a "no action" scenario in its decisionmaking. Specifically, they point out that the Record of

8

Decision does not acknowledge the loss of plants or wildlife on the Greer Parcels. However, the Record of Decision relies on the final EIS, which concludes that "[t]he proposed action would result in no negative effect on [threatened, endangered, or sensitive] plant and animal species and their habitat." Therefore, the Record of Decision does not fail to list the benefits of retaining the Greer Parcels to threatened, endangered, or sensitive plant and wildlife. This is consistent with the Forest Service's listed benefit of the proposed exchange, which discusses only riparian and vital species habitat on the Owens Parcels, rather than all plants and wildlife that would be gained in the exchange.

Plaintiffs also argue that the Record of Decision should mention that the land available for recreational opportunities on the Owens Parcels is seasonally unavailable and distant from Greer. Plaintiffs do not cite any evidence indicating that the allegedly omitted information is true. Nor do they cite any support for their assertion that a failure to consider seasonal unavailability and distance from a specific town is an "important aspect of the problem," such that a failure to consider it is arbitrary and capricious. *Lands Council*, 537 F.3d at 987.

**B.**

The land to be exchanged must be appraised, 43 U.S.C. § 1716(b), in accordance with the Department of Justice's Uniform Appraisal Standards for

9

Federal Land Acquisitions ("UASFLA"), 36 C.F.R. § 254.9.  Plaintiffs challenge three types of choices made in the appraisals.

**1.**  Plaintiffs challenge the Greer Parcel appraisal's choice of comparables. First, Plaintiffs argue that the appraisal's failure to include two Greer sales results in undervaluing the Greer parcels.  The UASFLA establishes that "transactions in lands in the vicinity of and comparable to the land under appraisement, reasonably near the time of acquisition, are the best evidence of market value."  UASFLA § B-4.  The appraiser established that she could not find comparable sales in Greer, and instead used location-adjusted sales in other towns to value the Greer Parcels. These comparables may not be the "best evidence" to which the UASFLA aspires, but Plaintiffs have not shown that the appraisal showed a clear error in judgment by excluding the two Greer sales.

Plaintiffs also argue that the appraisal fails to consider the 2003 sale of 8.16 acres immediately adjacent to one of the Greer Parcels, or to list it as excluded from the appraisal. The appraisal of the Greer Parcels explains that it does not consider any comparables that were sold before May 2005 because "there are a sufficient number of sales since 2005 to provide an adequate analysis of the current market value, eliminating the need to rely on the older sales."   This is consistent with the UASFLA's recommendation that comparables considered should be

10

"reasonably near the time of acquisition." UASFLA § B-4 (citing, *inter alia*, *United States v. 100 Acres of Land*, 468 F.2d 1261, 1265 (9th Cir. 1972)). And even if the appraisal should have included this sale, Plaintiffs have not shown that they were prejudiced by the omission because they do not explain how the appraiser's weighted average of comparable sales would have changed. *See Del Norte Cnty. v. United States*, 732 F.2d 1462, 1467 (9th Cir. 1984) ("[I]nsubstantial errors in an administrative proceeding that prejudice no one do not require administrative decisions to be set aside.").

**2.** Second, Plaintiffs challenge the appraisal's location adjustment, arguing that the adjustment causes the appraisal to undervalue Greer properties and overvalue properties in Show Low, a different town, that were also considered. Plaintiffs argue that the location adjustment compares high-end Show Low properties to average Greer properties. Plaintiffs do not cite any evidence to support their assertion that the two sets of properties are unrepresentative of the two locations. Plaintiffs also argue that the exclusion of one Greer lot for being too "high end" is unfair because the comparison considers several lots in Show Low with substantial amenities. The appraisal finds that the excluded Greer sale is an unrepresentative outlier, while the Show Low homes, representing over half of

11

the sales in Show Low, are representative of sales in Show Low. Again, Plaintiffs fail to show a clear error in judgment.

**3.** Plaintiffs also challenge the Greer Parcels appraisal's historical adjustment. Each appraisal adjusts historical sales to analyze the sales as though they occurred in the financial environment that prevailed on September 19, 2008. Each appraisal sets a shelf life of one year, consistent with the UASFLA. *See* UASFLA § D-13.

Plaintiffs argue that the Greer Parcels appraisal relies on prices set at April 2006 levels that should have been updated to account for the downturn experienced by September 2008. But because the Greer Parcels appraisal concluded that unimproved land prices had been flat since 2006, no adjustment from 2006 to 2008 was necessary.

Second, Plaintiffs argue that the appraisals should have been updated between September 2008, when the appraisals were prepared, and September 2009, when the exchange was executed, because of the extraordinary market conditions in that year. In essence they argue that because the economic crisis was unprecedented, the one-year shelf life expected in September 2008 was, in retrospect, too long. But Plaintiffs have not put forward any evidence that the national recession affected the *relative* value of the Greer and Owens Parcels.

12

This matters because an exchange is concerned with the relative value of two sets of property rather than the absolute value of either. *See* 43 U.S.C. § 1716(b); *cf. Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1185 (9th Cir. 2000) (BLM guidelines required update to land exchange appraisal because "significant local events," affecting one of the properties to be exchanged, occurred). Therefore, Plaintiffs fail to show that the Forest Service's decision not to update the appraisals was arbitrary and capricious.

## IV.

Accordingly, the judgment of the district court is

**AFFIRMED.**